When you're ready, Mr. McGlone. Thank you, Your Honor. May it please the Court, Kevin McGlone on behalf of the plaintiff, Antonio Saavedra-Vargas. Your Honor, the issue in this case is whether the district court can essentially overlook the plain terms of its own scheduling order. The district court entered a scheduling order that was agreed to by the plaintiff and BP that put no restrictions on the expert witnesses he could identify when the trial date was continued. When Judge Fallin continued the trial date, he told the parties, go work out a new scheduling order. He didn't issue his own scheduling order. He said, go work out your own scheduling order. And he did that principally to alleviate prejudice to BP because there were going to be new experts and it was to give BP the opportunity to have rebuttal reports, to have new experts that BP needed to identify. So both parties submit a proposed scheduling order to the court. And the proposed scheduling order has the broad language, it's the standard federal court, you know, all expert reports for the plaintiff are due on this date, all expert reports for the defendant are due a month later. There's no qualification. There's no clarification. There's nothing in there where Judge Fallin or the parties at first say only new reports related to this invisible oil study, only . . . But isn't that what is discussed at the hearing, though? There's a hearing that's prompted by your side asking to supplement or bring in a new expert based on some developed, recently developed information. That's correct, Your Honor. There's a transcript that I think is in the record that seems to be pretty insightful in terms of what the court's doing and why. Why should we not look at that transcript? I think you can look at the transcript, Your Honor, and he's talking, and you're right, that the discussion and the motion to continue is prompted by bringing in the new experts on the invisible oil study. But ultimately, at the end of the day, what is released and what is ordered says you can identify any experts. The plaintiff has the opportunity to put in experts in reliance on what that scheduling order says. BP, they're a sophisticated company. They've got extremely qualified and able counsel, and nobody pushes back. Nobody goes to Judge Fallin and says, Judge, we don't like this broad language. We want more limiting language, and let the judge decide what language he's going to put in the scheduling order. That's not, that doesn't happen. The parties submit the proposed scheduling order. The judge adopts it. He makes some changes, I think, to some of the dates, but he certainly doesn't affect the language. And . . . How close were you to trial when you had the hearing on the motion resulting in the scheduling order? You had an existing trial date. Was it within a few months? I think it was within a couple of months, and I know there had been some delays because of COVID. So you're arguing that the new scheduling order would reopen a lot of the deadlines that had previously passed? The only deadline that was, the only deadlines that were reopened, Your Honor, were the deadlines specified in the scheduling order, starting with the expert reports. I'm not, we're not suggesting that the judge said, you know, we're creating new deadlines, you can go amend the complaint, you can go . . . but there was a defined scheduling order and the first paragraph on the proposed scheduling order addressed expert reports. It wasn't buried in a whole bunch of deadlines and it's not, there wasn't just an order, nor was there an order that simply said, trial is moved from September 1 to May 1, whatever the dates were. So you're not getting an issue that, you know, I know it comes up a lot in the district courts where you continue a trial well after the deadlines and then you get in this fight, well, somebody wants to bring in an expert. That doesn't happen. You have an actual scheduling order that specifically addresses providing expert reports by the plaintiff and by BP. And what I'd note, after BP, I'm sorry, after the plaintiff identifies the new experts and produces the new expert reports, before the motion to strike is filed, the court continues the trial date another two weeks and extends the deadline for BP to produce expert reports by another two months. He gave them from, I think, early July of 2021 to the beginning of September of 2021 and he pushes the trial from September 20 to October 4. So he gives some relief to BP, and this is all before this motion to strike is filed, so the issue is addressed. You know, come back to the fact that, you know, the district court here is adopting the wording the parties rely on. There's no, BP hasn't found any case where the court can sort of look beyond the plain words of the order and say, well, this is what the spirit of the order says. This is what I meant to say. That's not what the court said. That's not what happened and that's not what the plaintiff was relying on when the plaintiff provided these additional expert reports. The case that the BP relies on is the unpublished decision by this court in Harmon. Harmon really isn't applicable here. In Harmon, you have a situation where a plaintiff, by the deadline, produces some very bare bones and minimal expert reports. It's not really clear in the opinion what they say, but I assume it was very conclusory and there's no analysis. After the scheduling order allowed for supplementation of expert reports, but what the plaintiff did in Harmon was try to, in large respects, go back and cure the deficiencies in the original reports, and in some cases, went beyond and actually was adding new opinions to the report. And what this court said was, you don't get this issue of, there was no technicality. Everybody understands under Rule 26, if you're going to produce an expert report, that report, when it's issued, when you send it to the other side, better have all the opinions that you're going to produce or that the expert's going to testify to. You don't go adding new opinions or changing your theories after the expert report deadline. And you've got to explain the rationale for your opinions. Doctor doesn't say the accident was caused by, or the injury was caused by the accident and then go back two months later and add all the detail to say why it was. The report's supposed to say that, and that's why the court in Harmon struck those reports and said, they're untimely. You can't sort of do this trap where you get to issue a meaningless expert report and then try to correct it later, after the deadline. There are several district court cases we've cited in our briefs where, in similar contexts, where plaintiffs have had expert, where there's a scheduling order that says, explains how you produce the expert reports, and the defendants have tried to limit or say that there's more limiting language. In those courts, one of them, there was another BP case, another one of these back-end litigation opt-out cases in Florida where that was almost identical to this case. And the district court there said, you know, the order says, the order did not qualify the number of experts, it did not qualify what kinds of experts in an amended scheduling order could be issued, and therefore we're going to allow the plaintiff to proceed with the experts as he's noticed them, or, you know, without any qualification. There was another decision, a district court case out of California, the Rambus case, where it was a phased litigation involving patent infringement, and before the first phase of the trial, the district court had told the defendants, you can have one expert testify on these issues. After that, when you move to the second phase of litigation, the defendants wanted multiple experts and the plaintiff complained and said, no, that's not what the scheduling order says. District court says, well, no, that scheduling order applied to the first phase. There's nothing in it that says it applies to both phases of litigation, and so he doesn't limit the experts in that case. Those cases are more on point than Harmon, where there was an intentional, it was an attempt to sort of skirt the rules or get around the rules on expert reports, thinking you could supplement a de minimis expert report. Another case that BP has brought up by this court is another decision in Geisserman. Geisserman doesn't help the plaintiffs either. Geisserman is a situation where the plaintiff is given multiple attempts to provide expert reports. The deadlines are extended. He doesn't do it. He doesn't do it by the deadline. He produces nothing and then comes in after the fact and tries to provide the expert reports in the district court, and then this court said, no, that's too late. You had your chances. We've given you all these opportunities. You can't just ignore orders and expect us to grant you relief at the last minute. This is a situation where the plaintiff complied with the order. The plaintiff timely provided expert reports in accordance with what the district court said in its scheduling order. The plaintiff should be allowed to rely on what that scheduling order says and provide expert reports in accordance with that scheduling order, rather than be held to some higher standard and limited where there's nothing in the order itself. I think it's important to note, again, an order that BP agreed to before it was entered by the district court regarding the restriction of the experts. That's our argument. Unless the court has any questions, I'll thank you, Your Honor. Thank you, counsel. You'll have time for rebuttal. Mr. Jarrett? Yes, Your Honor. Your Honors, may it please the Court, Keith Jarrett for the Defendant's BP. I think I'd like to start by saying that we think the plaintiff is focusing on the wrong issue here. The principle at issue in this case is that a litigant cannot tell a judge one thing to secure schedule relief, then do another, and expect to have no consequences from that. That's what happened here. Consider the big picture. Let's look back. I'm going to get to the motion to strike that was actually granted by Judge Fallin. But the first most important motion is the one I lost, which was the motion to continue. Two months before trial, the plaintiff filed a motion to continue the case and extend the concession that he made in his motion papers. And in the motion papers, he advocated before Judge Fallin that there had been new science that had developed that came out of the University of Miami and that he had approached and retained one of the authors, co-authors of that study, a Dr. Natalie Perlin. He made the argument in his motion papers, he mentioned no other expert or no other reason for the extension. We had oral argument, and we opposed that, saying, and I should back up, his expert at that time was a toxicologist well-known in the toxic tort field named Dr. Patricia Williams. He had used Dr. — same counsel had used Dr. Williams in Florida for — to support other BELO claims that were venued there, also sinus claims, just as Mr. Vargas. In a lengthy 50-plus page opinion, Judge Rogers in the Northern District of Florida excluded Judge Williams. When did that happen? November 4, 2020. When did he file this motion for a continuance? November 17. And to his credit, two weeks later, he acknowledged that he was in a tough spot. His experts wouldn't survive. And so he used the invisible oil paper as the carrot to get Judge Fallin to grant him the extension. And over our objection, he won. Judge Fallin agreed with him. But importantly is why Judge Fallin agreed with him. And as Judge Engelhardt noted in questions to my opponent, an oral argument — and this is from — in the transcript, this is document 127 of the district court, and this is page 28 of the transcript on the oral argument on the motion to continue, and this is not Mr. McGlone speaking, but his co-counsel from Florida, Mr. Durkee. It is exactly, you know, one of the reasons why we feel it's essential, if this case is to proceed forward, to attempt to bring in this new evidence, which is new evidence. It's new scientific evidence. It's not like we're taking another toxicologist off the side, you know, taking another toxicologist off the bench and putting him in. This is not that. This is not a replacement expert. This is a new science that will allow us to calculate concentrations of PAHs — that's a chemical — coupled with the acceleration of the PAHs by the ultraviolet radiation, all of which has never been done before prior to the invisible oil study. This is not, like I said, this is not taking a second-string quarterback and trying to  And during the hearing, was Dr. Perlin specifically discussed, the author of the new study? Indeed, she was, Your Honor. That was — if you read the transcript, that was all that was discussed. To refresh my recollection, I apologize, was Dr. Perlin — did Judge Fallon allow Dr. Perlin to be designated? He did, Your Honor, and in fact, you anticipate my next question, my next point, because in his order granting relief, the relief that the plaintiff requested, he was very clear as to why he was granting the relief. And this is what Judge Fallon wrote. Plaintiff contends good cause exists because plaintiff's proposed new expert, singular, will require time to develop opinions in the case. A recent study has revealed additional oil deposits from a Deepwater Horizon spill. Plaintiff has since retained one of the study's authors, Dr. Perlin, to conduct a new study to quantify the level and duration of plaintiff's toxic exposure to determine whether there is any causal relationship between it and his malady. Plaintiff insists that the proposed study will help him meet his burden of proof on causation. Judge Fallon, as all judges have tendencies, Judge Fallon's tendency is to let lawyers present their case. And he was giving the plaintiff a chance to present his case by retaining Dr. Perlin in hopes of meeting his evidentiary burden of proving medical causation. But when six months later, when it came time to issue his expert reports, he issued 12 new reports, not one, 12. And, you know, we called foul and we filed a motion to strike because only Dr. Perlin and her co-author, another woman named Dr. Parris, only their report referenced the invisible oil study, which was the impremise for their continuance. And so Judge Fallon, in a detailed opinion, nine pages, agreed with us. And Judge Fallon wrote in response to our motion to strike, plaintiff appears to have used this opportunity to designate a whole new lineup of experts that have nothing to do with the new science that was the basis of the original motion to modify the scheduling order. This goes against both the spirit and purpose of the court's January 19, 2021 order and reasons. That was his order granting the continuance. So it wasn't that that Judge Fallon struck the new experts because they weren't named Perlin. He struck them because they didn't use the new science that was the premise for the extension. And he got it exactly right. There is no case law, and plaintiff cites none, to suggest that a court has to ignore the premise that was put for him when a party sought relief. The plaintiff wants to say we can rely on the plain language of the scheduling order. That's their argument, because the scheduling order is silent on this point. But Judge Fallon knew better. He was there when the position had been advocated to him. So you don't just look at the scheduling order. You have to look at the scheduling order and his order granting their prior motion to continue. And when you read those in paramateria, whatever the Latin phrase is, you know that the basis for the ruling was not to produce 12 new experts who don't rely on the new science. If—I think—I mean, the way I—I think Judge Fallon felt hoodwinked, because if the plaintiff had indicated at the original motion to continue that he wanted to bring in 12 new experts who didn't rely on the new science, would he have granted their motion to continue? I think not, because he said—he has commented in his reasoning that just because your new science doesn't rely on the new science doesn't mean that you have to grant a continuance. The only reason to grant a continuance, because the science allegedly had changed, and he was sympathetic to that. And so once you conclude—once you conclude that the plaintiff's production of 12 experts was inconsistent with the scheduling order and the motion to continue because they did something that they represented they would not do, then you turn to the second in his order, which was whether under Rule 37c1—Federal Civil Procedure 37c1—says if experts are produced untimely, and Judge Fallon found these were untimely because they were inconsistent with his order, then you evaluate for whether their—the phrase is substantially justified or harmless error. And the judge went through the four-factor test. There's many cases from this Court that identify the four factors, the explanation, whether there's prejudice, whether a continuance would do—would solve the problem and the importance of the testimony. And he evaluated each of those four factors, and we have done that in our brief as well, and he was well within his discretion. Importantly, his decisions about docket management, his decisions about whether the plaintiff  And there's no one—no cases that have been cited by the plaintiff to suggest that a judge abuses his discretion when he looks at the context and purpose for which he provided relief. There wasn't any—two last points. The plaintiff makes a point of the fact that the parties put together the scheduling order, and he suggests, well, if BP had been concerned about our number of experts, B.C. could have folded that into the scheduling order. It's true enough. We could have done that, but he had represented already to the Court and to us that he was not intending to do that, and so I—you know, shame on me, but I didn't see a need to include that in the scheduling order, given his prior representations. And as for the motion for summary judgment, I don't think the plaintiff didn't discuss it. If Judge Fallin was correct to exclude these experts, the plaintiffs lacked any evidence of medical causation, and the motion for summary judgment was a fait accompli. They don't dispute their—they don't dispute that point. Absent their experts, they didn't have enough evidence to create a genuine issue of material fact, and summary judgment was appropriate. So unless there are any questions, Your Honor, I'll cede the rest of my time.  Thank you, Your Honor. Mr. McGloin, rebuttal. I guess let me ask you from the outset, Mr. McGloin. I see from your reply where you're relying on the plain language of the amended scheduling order. I get that. Can you give us a case, or what's your best case, for the proposition that it's the—we have to read that strictly, so to—sort of the terms of the amended scheduling order have to control over any contrary indication in the record of the purpose of the amended   scheduling order? The cases I mentioned earlier, the two district court cases where the court looked at the plain wording of the scheduling orders and said he would allow the expert reports to come in. I think if you—it's tough to—and look, all respect to Judge Fallin, I think it's tough to sort of divine or ask a party or a litigant to interpret the meaning or the order itself controls. I mean, we do this— I can imagine that a lot of cases where it might be difficult, but in this one, I mean, Doctor, the new study was discussed as a basis for the amended order, right? That's correct, Your Honor, it was. And the author, Doctor, was it Perlin? Perlin, yes. Dr. Perlin was allowed to be designated. That's correct. She was allowed to be designated. So I guess then a sort of common sense point then, what are you complaining about if Dr. Perlin did get designated? Well, the issue is Dr. Perlin gives her reports, but other experts are necessary. Dr. Perlin only gets you the ball so far. To get the ball—to get over the goal line, to survive a summary judgment and even be successful at trial, additional experts were necessary. And that's what Mr. Vargas was—his counsel were working on, that's why the additional experts that they felt would resolve any issues they would have, particularly after Dr. Williams had been struck in the Northern District of Florida and there was a recognition that her testimony was probably not going to be admissible in this court or any other court. And I think to answer your question, I think it goes back almost to some type of a plain wording. The parties can intend something, the parties can mean something, they can talk about one thing, but when it goes on black and white and it's entered into the record, you know, it's obviously—it's broader than maybe what the district court had intended. But that's what the parties have to go on and that's the expression of what the court has said and how the court has ruled. And so we would ask the court to find there's an abuse of discretion to overturn the scheduling order and to reverse the motion to strike the experts and reverse summary judgment. Unless the court has any further questions. No, thank you. Thank you, counsel. That concludes the case under submission. Thank you for your arguments. That concludes our oral argument session for the day. And the court will stand in recess until tomorrow morning at 9 a.m. Thank you.